UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF SERGIO GARCIA-VASQUEZ, ARANZA VASQUEZ-REGALADO, an individual and minor, by and through her guardian ad litem, STEPHEN G. LINCOLN, DIEGO VASQUEZ-REGALADO, an individual and minor, by and through his guardian ad litem, STEPHEN G. LINCOLN, <br><br> Plaintiffs, <br><br> vs. <br><br><br> COUNTY OF SAN DIEGO, a municipal corporation, DEPUTY JOHN SPACH, an individual, DEPUTY SHAWN AITKEN, an individual, CAPTAIN ROB AHERN, an individual, and DOES 1-100, inclusive, <br><br> Defendants. | CASE NO. 06CV1322-LAB (LSP) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** <br><br> [Dkt No. 4] |

This civil rights action arises out of the fatal shooting of Sergio Garcia-Vasquez by San Diego County sheriff deputies. The matter is before the court on defendants' Motions To Dismiss And To Strike Plaintiffs' Complaint ("Motion"). Plaintiffs are the estate of Garcia-Vasquez and his two minor children through their guardian *ad litem*, Stephen G. Lincoln. Plaintiffs filed Opposition to the Motion, and Defendants filed a Reply. Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues presented appropriate for decision on the papers and without oral argument. For the reasons discussed below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.     BACKGROUND

The Complaint alleges that on July 28, 2005, San Diego County Sheriff Deputies John Spach and Shawn Aitken responded to a report of a domestic dispute at Garcia-Vasquez's home in Vista, California. They entered the residence. A confrontation ensued. Deputy Aitken allegedly cornered Garcia-Vasquez, then shot him once in the leg and again in the back, killing him.

Plaintiff the Garcia-Vasquez Estate has as its personal representative Elizabeth Sorely Regalado-Hernandez ("Regalado), the common-law wife of Garcia-Vasquez, who resides in Oaxaca, Mexico, "where such common law marriage is sufficient to confer legal rights." Compl. ¶ 3. The two other plaintiffs are minor children Aranza and Diego Vasquez-Regalado, the twin son and daughter of the decedent. They reside in Ciudad Oaxaca, Oaxaca, Mexico. The court granted the application to appoint as guardian *ad litem* Stephen G. Lincoln, a San Diego, California resident identified as a close family friend unrelated to the children and with no interests adverse to them. Dkt No. 7.

The Complaint names as defendants the County of San Diego, Deputies Spach and Aitken, and Captain Robert Ahern. Plaintiffs allege eight causes of action: One, a 42 U.S.C. § 1983 ("Section 1983") claim brought by the children against defendants Spach and Aitken based on Right of Association, purportedly actionable under their Fourteenth Amendment substantive due process right to the familial love, society, and companionship of their father caused by the allegedly unreasonable use of deadly force against him, in violation of his Fourth and Fourteenth Amendment rights; Two, a Section 1983 claim for Wrongful Death brought by the children against defendants Spach and Aitken on the same premises as the first cause of action; Three, a Section 1983 claim of Excessive Force brought by the estate plaintiff against Spach and Aitken; Four, a Section 1983 Monell[1] claim brought by all plaintiffs against the County of San Diego; Five, a Section 1983 Supervisory Liability claim brought by all plaintiffs against defendant Ahern; Six, a CAL. CODE CIV. P. § 377.60 Wrongful Death claim brought by the children against defendants Spach, Aitken, and the County of San Diego; Seven, a Battery claim brought by the estate plaintiff against Spach, Aitken, and the County of San Diego; and Eight, a Negligence claim brought by the estate plaintiff against all the defendants.

\\

---

[1] Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658 (1978).

Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted under FED.R.CIV.P ("Rule") 12(b)(6), and for lack of jurisdiction under Rule 12(b)(2). They also move to strike portions of the Complaint pursuant to Rule 12(f), on grounds: Complaint paragraphs 22, 29, 36, 47, and 51 request damages that are not recoverable as a matter of law; the "prior event" allegations in Complaint paragraphs 12, 14, 15, 43, and 51 (describing incidents of shootings by other deputies in unrelated incidents) should be stricken as immaterial, impertinent, and scandalous; and one or the other of claims One and Two should be stricken as redundant, repetitive, and duplicative. Defendants argue, among other things: the individual plaintiffs are without standing to assert constitutional claims; none of the plaintiffs can recover emotional distress damages associated with Garcia-Vasquez's death; and no excessive force or wrongful death claim can be asserted against persons not alleged to have personally shot the decedent.

## II.   DISCUSSION

### A.   Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal on grounds of failure to state a claim is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro, 250 F.3d at 732. Dismissal is warranted where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, dismissal is warranted where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534.

In reviewing a Rule 12(b)(6) motion to dismiss, the court must assume the truth of all factual allegations and must construe them as well as all reasonable inferences in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on the motion, the court may consider the facts

1  alleged in the complaint, documents attached to the complaint, documents relied upon but not attached
2  to the complaint when authenticity is not contested, and matters of which the Court takes judicial
3  notice. Parrino v. FHP, Inc., 146 F.3d 699, 705-706 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449,
4  453-54 (9th Cir. 1994), *overruled on other grounds in* Galbraith v. County of Santa Clara, 307 F.3d
5  1119 (9th Cir. 2002); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). In granting
6  a Rule 12(b)(6) motion, leave to amend is ordinarily denied only when it is clear that the deficiencies
7  of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655,
8  658 (9th Cir. 1992).

9  Motions to strike are properly granted if the pleading contains "any insufficient defense or any
10 redundant, immaterial, impertinent, or scandalous matter." Rule 12(f).

**B.    Standing**

12 The individual plaintiff children base their claims on a deprivation of their asserted
13 "substantive due process right to the familial love, society and companionship of their father . . . as
14 guaranteed by the Fourteenth Amendment" through defendants' purportedly unjustified use of force
15 to kill Garcia-Vasquez in alleged violation of his Fourth Amendment rights. Compl. ¶ 21 ("The
16 unreasonable use of deadly force causing the constitutional deprivations and death to SERGIO
17 GARCIA-VASQUEZ, simultaneously deprived Plaintiffs ARANZA and DIEGO VASQUEZ-
18 REGALADO of" their alleged substantive due process rights). Defendants contend the First, Second,
19 Fourth, Fifth, and Sixth causes of action must be dismissed because, as foreign nationals residing
20 outside the sovereign territory of the United States, the individual plaintiffs have no standing to assert
21 constitutional claims or to pursue any Section 1983 action.

22 Plaintiffs' response to the standing argument skirts the question whether aliens outside the
23 United States or its territories, with no apparent tie to confer on them the constitutional protections of
24 this country, have standing to assert causes of action based on alleged deprivations of "their" rights
25 protected by the United States Constitution. The argument that the plaintiff *estate's* claim under
26 Section 1983 for loss of life is viable has no bearing on the challenge to the *individual* plaintiffs'
27 standing to assert claims in federal court based on constitutional rights when they do not dispute -- and
28 \\

expressly allege in the Complaint -- they reside outside the United States. They identify no personal connections to the rights and privileges of American citizenship or legal residency status.

To save their claims, plaintiffs argue that foreign nationals who have been injured by acts of state officers inside the United States can sue under Section 1983 on grounds the "right of familial association which is the basis for the first and second claim is based on the Fourteenth Amendment, not the Fourth Amendment." Opp. 4:12-13, *citing* Smith v. City of Fontana, 818 F.2d 1411 (9th Cir. 1987), *overruled on other grounds by* Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999) (permitting cause of action for a child's interest in companionship with a parent as sufficient to constitute a liberty interest under the Fourteenth Amendment's due process and equal protection clauses). However, in Smith, the plaintiff children and their decedent parent appear to have been United States citizens residing in California. These plaintiffs predicate their familial rights claim on "substantive due process" violations arising "simultaneously" with the Fourth Amendment violation purportedly inflicted on their father within the United States. Compl. ¶ 21. The dispositive issue here is not whether such rights are cognizable in federal court, but rather who has standing to assert such a claim. Plaintiffs cite no authority for the proposition this court may exercise jurisdiction over claims alleged to be violations of plaintiffs' own constitutional rights made by aliens residing outside the United States who demonstrate no personal entitlement to those protections. Their argument takes account only of the claim statements, not the standing issue.[2] Moreover, plaintiffs' digression to examine aspects of the Federal Tort Claims Act is immaterial to this disposition.

"It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." Zadvydas v. Davis, 533 U.S. 678, 693 (2001), *citing* United States v. Verdugo-Urquidez, 494 U.S. 259, 269, 268 (1990) (the United States Supreme Court has "rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States;" Fourth Amendment protections do not extend to aliens in foreign nations). Even accepting children may have a cause of action under the constitution for cognizable injury when a parent has been killed by police, these plaintiffs offer no authority to

---

[2] "When state officers acting under state law kill a person in the United States in violation of the United States Constitution, the children of the decedent are persons under § 1983 and the Constitution who may seek redress in Federal Court." Opp. 7:8-10.

establish non-resident aliens have standing to invoke constitutional rights for themselves. "[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." <u>Verdugo-Urguidez</u>, 494 U.S. at 271, *citing, inter alia* <u>Pylar v. Doe</u>, 457 U.S. 202, 212 (1982) (stating the provisions of the Fourteenth Amendment "are universal in their application *to all persons within the territorial jurisdiction. . .*") (citation omitted).

The court finds the alleged Section 1983 claims cannot be prosecuted on behalf of these non-resident alien minors, as they lack standing to enforce constitutional rights as their own. Accordingly, defendants' Motion To Dismiss is **GRANTED** as to the First and Second causes of action. The Motion is also **GRANTED** as to the Fourth cause of action under <u>Monell</u> and the Fifth cause of action alleging supervisory liability, but only to the extent those claims are purportedly asserted by the individual plaintiffs. The estate plaintiff's claims in the Fourth and Fifth causes of action survive. The Sixth cause of action arises under state law, to which the Section 1983 arguments do not apply. Accordingly, the Motion with respect to that claim is **DENIED** on the dismissal theory presented.

### C.   Emotional Distress Damages

Defendants move to strike as an improper damages theory all Complaint allegations of plaintiffs' emotional distress, pain and suffering caused by Garcia-Vasquez's death. "[A] motion to strike may be used to strike any portion of the prayer for relief when the damages sought are not recoverable as a matter of law." <u>Bureerong v. Uvawas</u>, 922 F.Supp. 1450, 1479 n.34 (C.D.Cal. 1996); *see* <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990) (dismissal of claims not cognizable is proper). Defendants contend pain and suffering and emotional distress damages are prohibited by state law regulating survival and wrongful death actions, relying on CAL. CODE CIV. P. §§ 377.34, 377.61. In opposition, plaintiffs do not dispute the state law limitation. However, they argue under some circumstances, mental and emotional distress and pain and suffering damages caused by the denial of a constitutional right can be recovered by a victim of a federal civil rights violation, although they acknowledge "there is a difference of opinion on the subject." Opp. 9:8. The Motion to strike and dismiss emotional distress damages claims associated with the state tort causes of action (wrongful death, battery, and negligence) is **GRANTED**. The court has found the individual plaintiffs lack standing to sue to vindicate personal rights arising under the United States Constitution.

### D. Allegations Of Other Incidents Involving Suspects Not Parties To This Action

Garcia-Vasquez was shot and killed July 28, 2005.  Defendants move to strike the "General Allegations" of the Complaint describing three other, unrelated fatal shooting incidents involving different deputies and different suspects, in May, July, and August 2005. Compl. ¶¶ 12, 14, 15. They ask the court to strike such allegations from the Complaint as scandalous, immaterial, and derogatory. Plaintiffs defend those General Allegations as relevant to the Monell claim, which requires they demonstrate a custom or practice of the municipality in order to prove a constitutional injury resulted from that custom or practice. They distinguish defendants' authority as relying on standards applicable to the admissibility of evidence at trial rather than standards appropriately applied at the pleading stage. Defendants' Reply does not defend the motion to strike those paragraphs, an omission the court construes as an abandonment of the argument. The Motion to strike allegations of other incidents of weapons use by other deputies is accordingly **DENIED**.

### E. Redundancy Of Causes Of Action One And Two

Defendants contend the essential allegations of claim One (Right of Association) and claim Two (Wrongful Death) brought as Section 1983 claims by the decedent's children are the same. Plaintiffs defend the distinctness of the claims by insisting the "first cause of action is for deprivation of substantive due process rights under the Fourteenth Amendment and the second cause of action is specifically for harm caused by the death of their father, including economic harm." Opp. 10:20-22. As the court has ruled decedent's children have no standing to pursue claims premised on United States constitutional rights violations, warranting dismissal of both the First and Second causes of action, this portion of the Motion is **DENIED AS MOOT**.

### F. Propriety Of Excessive Force, Fourteenth Amendment, And Wrongful Death Causes Of Action Against Defendants Ahern And Spach

Defendant Deputy Aitken is alleged to have shot the decedent. Defendant Deputy Spach is alleged only to have accompanied Deputy Aitken in response to the report of domestic violence that culminated in Garcia-Vasquez's death. The Complaint does not allege defendant Captain Ahern was personally involved in the incident. Defendants move to dismiss defendants Spach and Ahern on grounds no excessive force, Fourteenth Amendment, or Wrongful Death cause of action can be asserted against those defendants "because they are not alleged to have personally shot decedent."

1  Mot. 8:1-13. They argue: public servants are not subject to vicarious or *respondeat superior* liability
2  under state law or federal Section 1983; and negligent hiring, training, and supervision of subordinate
3  employees (Claim Eight, "'Negligence") is purportedly not a recognized theory of recovery under the
4  California Tort Claims Act (*citing* Van Ort v. Estate of Stanwich, 92 F.3d 831, 840 (9th Cir. 1996))
5  or any other statute authorizing governmental tort liability claims against a public entity or its
6  employees (*citing* Searcy v. Hemet Unified School Dist., 177 Cal. App.3d 792, 802 (1986)). However,
7  Van Ort is distinguishable. That case addressed a situation where a law enforcement officer was not
8  acting within the scope of his employment when he committed a criminal act, foreclosing any liability
9  exposure for his employer. Searcy stands for the proposition that in California, all government tort
10 liability is dependent on the existence of an authorizing statute or enactment and held a school district
11 had no mandatory duty under a statute to remedy allegedly dangerous conditions. Searcy, 177
12 Cal.App.3d at 802.

13       Plaintiffs substantiate that Section 1983 liability can attach in some circumstances even without
14 the direct participation of the named supervisor. *See* Redman v. County of San Diego, 942 F.2d 1435,
15 1446 (9th Cir. 1991 (*en banc*); Motley v. Parks, 432 F.3d 1072, 1081 (9th Cir. 2005 (*en banc*). If
16 plaintiffs ultimately establish a direct causal connection between a constitutional violation and the
17 supervisor's conduct, such a supervisor may face liability. *See* City of Oklahoma v. Tuttle, 471 U.S.
18 808, 823 (1985) (a supervisory official may be liable under Section 1983 for the behavior of
19 subordinates if (1) that behavior results in a constitutional violation and (2) the official's action was
20 affirmatively linked to that behavior in a manner that could be characterized as "supervisory
21 encouragement, condonation, or acquiescence" or "gross negligence amounting to deliberate
22 indifference"); *see also* Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (a supervisor
23 can be liable under Section1983 if he "set[s] in motion a series of acts by others . . ., which he knew
24 or reasonably should have known, would cause others to inflict the constitutional injury").

25       As observed by defendants themselves, in deciding Section 1983 claims, "the inquiry into
26 causation must be individualized and focus on the duties and responsibilities of each individual
27 defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Mot.
28 12:26-28, *citing, inter alia,* Monell, 436 U.S. 658; *see* Bryan County Commissioners v. Brown, 520

U.S. 397 (1997). Such a factual inquiry and findings are not permitted under Rule 12(b)(6) dismissal standards, nor is it possible to conclude at this stage in the proceedings that the estate plaintiff could prove no set of facts entitling it to relief against these defendants. For example, municipal liability can attach if the individual state actor defendants ratify, condone or instigate the conduct giving rise to the constitutional violation claims. If the shooting constituted an exercise of excessive and unreasonable force by a subordinate as alleged, and if Captain Ahern's actions or inactions in exercising his responsibilities for the operation of the Vista Sheriff's Sub-Station were shown to be affirmatively linked to unconstitutional conduct by Aitken or Spach, supervisory liability under the federal theory could also attach. The particular role or conduct of Deputy Spach associated with the shooting is not evident from the Complaint, but his liability exposure is not necessarily foreclosed merely because he did not pull the trigger. Accordingly, defendants' request to dismiss Captain Ahern and Deputy Spach is **DENIED** at this time.

### III. CONCLUSION AND ORDER

For all the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss the First and Second causes of action is **GRANTED**, for lack of standing of the individual minor plaintiffs to assert civil rights claims predicated on the protections of the United States Constitution.

2. The motion to dismiss the Fourth and Fifth causes of action is **DENIED**, but they survive only as claims by the estate plaintiff.

3. The motion to dismiss the Sixth cause of action for wrongful death under state law on the standing argument defendants advanced in their Motion is **DENIED**.

4. The motion to strike emotional distress damages claims associated with the state tort causes of action (wrongful death, battery, and negligence) is **GRANTED**.

5. The motion to strike allegations of other incidents of weapons use is **DENIED**.

6. The motion to dismiss defendants Ahern and Spach is **DENIED**.

**IT IS SO ORDERED**.

DATED: December 27, 2006

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge